IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re Elk Petroleum, Inc., *et al.*, | : Chapter 11 |
| | : Case No. 19-11157 (LSS) |
| Debtors. | : (Jointly Administered) |
| | : |
| North Carolina Capital, LLC, in its capacity | : |
| as Trustee of and for the Aneth Trust and the | : |
| EPI Liquidating Trust, | : Adv. No. 21-50474 (LSS) |
| | : |
| Plaintiff, | : |
| v. | : |
| | : Civ. No. 21-1131 (CFC) |
| Bradley William Longo, *et al.*, | : |
| | : |
| Defendants. | : |

## **MEMORANDUM ORDER**

At Wilmington this Twentieth day of September 2022:

Before the Court is the motion filed by two defendants, James Marshall Piccone and David Evans ("Defendants") to withdraw pursuant to 28 U.S.C § 157(d) the reference of the above-captioned adversary proceeding (D.I. 1, 14) ("Motion to Withdraw"). Defendant Bradley William Lingo has joined the motion. (D.I. 3, 11). Also before the Court is Defendants' unopposed motion to determine non-core proceedings (D.I. 8, 13) ("Motion for Determination"), which Lingo has also joined (D.I. 12). The Court has considered the responses (D.I. 9, 10) filed by North Carolina Capital, LLC ("Plaintiff"), in its capacity as Trustee of and for the Aneth Trust and the EPI Liquidating Trust (each as defined below). For the reasons set forth below,

1

Defendants' unopposed Motion for Determination is granted, and Defendants' Motion to Withdraw is denied.

1. **Background.** On May 22, 2019 ("Petition Date"), Debtors Elk Petroleum, Inc. ("EPI"), Elk Petroleum Aneth, LLC ("EPA") and Resolute Aneth, LLC filed voluntary petitions for bankruptcy relief in the Bankruptcy Court.

2. Pursuant to EPA's plan of reorganization (B.D.I. 594)[1] ("EPA Plan") confirmed by the Bankruptcy Court on October 8, 2019 (B.D.I. 619) ("EPA Confirmation Order"), the Aneth Trust Assets, which include the claims pursued in this adversary proceeding, were transferred to the Aneth Trust. The Bankruptcy Court retained jurisdiction over the claims pursued in the adversary proceeding. (EPA Confirmation Order § 12.1(b) (retaining jurisdiction "to determine any motion, adversary proceeding, contested matter, and other litigated matter pending on or commenced after the entry of the Confirmation Order, including any Cause of Action which may be asserted by the Aneth Trustee"). The Bankruptcy Court further retained jurisdiction "over all matters . . . that relate to the matters set forth in the Plan" (EPA Confirmation Order ¶ 164), "to determine whether or not any claim or right has been affected by the Plan or this Confirmation Order" (*id.* ¶ 165), and "to

---

[1] The docket of the Chapter 11 cases, captioned *In re Elk Petroleum, Inc., et al.,* No. 19-11157 (LSS) (Bankr. D. Del.), is cited herein as "B.D.I. __." The docket of the adversary proceeding, captioned *North Country Capital, LLC v. Bradley William Lingo, et al.*, Adv. No. 21-50474 (LSS) (Bankr. D. Del.), is cited herein as "Adv. D.I. __."

2

take any action and issue such orders . . . as may be necessary to construe, enforce, implement, execute, and consummate this Plan, including any release, exculpation, or injunction provisions set forth in this Plan" (EPA Confirmation Order § 12.1(l)).

3.　　Likewise, pursuant to EPI's plan of reorganization (B.D.I. 926-1) ("EPI Plan") confirmed by the Bankruptcy Court on July 24, 2020 (B.D.I. 928) ("EPI Confirmation Order"), the EPI Liquidating Trust Assets, which include the claims pursued in the adversary proceeding, were transferred to the EPI Liquidating Trust. (EPI Plan § 6.4).  The Bankruptcy Court similarly retained jurisdiction over the claims pursued in the adversary proceeding, as well as "to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this EPI Plan," "to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the EPI Confirmation Order," and "to hear and determine all disputes involving the existence, nature, or scope of the exculpation or releases provided for in this EPI Plan." (EPI Plan § 11.1(g), (k), (o); *see also* EPI Confirmation Order at ¶ 67).

4.　　On May 19, 2021, Plaintiff, as Trustee of and for the Aneth Trust and the EPI Liquidating Trust, filed a complaint (Adv. D.I. 1) ("Complaint") initiating the adversary proceeding against Defendants, who are former directors and officers of EPI and EPA, asserting claims for breaches of fiduciary duties, aiding and abetting breaches of fiduciary duties, and corporate waste, and asserting damages in excess of $30,000,000.00.

3

5.  Defendant Piccone has filed certain proofs of claim ("POCs") against the Debtors in the Chapter 11 cases. (*See* D.I. 9 at Ex. A-C). On August 10, 2021, Piccone filed his answer to the Complaint (Adv. D.I. 37). He did not demand in the answer a jury trial.

6.  The docket of the adversary proceeding reflects that the discovery process is underway. (*See* Adv. D.I. 87-89, 93, 95-97). On July 18, 2022, the Bankruptcy Court entered an Amended Scheduling Order (Adv. D.I. 118), which provides that fact discovery will conclude by January 13, 2023; expert reports will be completed by April 24, 2023; expert depositions will conclude by May 12, 2023; briefing on case dispositive motions will be completed by July 28, 2023; and no trial date has been set.

7.  Motions to dismiss are pending. Defendant Evans filed a Motion to Dismiss the Complaint, arguing that certain releases contained in the EPI Plan and EPI Confirmation Order released the claims asserted against him in the Complaint (Adv. D.I. 35) ("Evans Motion to Dismiss"). Defendant Lingo has also filed a motion to dismiss (Adv. D.I. 50, 52). Oral argument has not yet been scheduled, and the Bankruptcy Court has not ruled on either motion to dismiss. Additionally, the Trustee and Defendant Alexander Hunter have stipulated to extend the deadline for Defendant Hunter to file a motion to dismiss the adversary proceeding ("Hunter Filing Deadline") through March 17, 2022, and that the parties were free to "further

extend the [Hunter] Filing Deadline without Court approval." (Adv. D.I. 103-1 at ¶ 7).

8.      **Jurisdiction.** District courts "have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Pursuant to the authority granted by 28 U.S.C. § 157(a), this Court refers cases "arising under title 11 or arising in or related to a case under title 11" to the United States Bankruptcy Court for the District of Delaware. *See* Am. Standing Order of Reference, Feb. 29, 2012 (C.J. Sleet); *In re Visteon Corp.*, 2011 WL 1791302, *3 (D. Del. May 9, 2011).

9.      **Discussion.** The reference to the Bankruptcy Court may be withdrawn by this Court in accordance with the mandatory and permissive withdrawal provisions of 28 U.S.C. § 157(d). Section 157(d) provides for situations when a district court *may* withdraw the reference and when it *must* withdraw the reference:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d). For permissive withdrawal, "[t]he 'cause shown' requirement in section 157(d) creates a presumption that Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court unless rebutted by a contravening

5

policy." *Hatzel & Buehler, Inc. v. Cent. Hudson Gas & Elec. Corp.*, 106 B.R. 367, 371 (D. Del. 1989) (internal quotations omitted). To overcome that presumption, the moving party has the burden to prove that cause exists to withdraw the reference. *See NDEP Corp. v. Handl–It, Inc. (In re NDEP Corp.)*, 203 B.R. 905, 907 (D. Del. 1996).

10. The well-recognized factors for this Court to consider in evaluating whether cause for permissive withdrawal is established, as determined by the Third Circuit in *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990), are: (1) whether retention of the proceeding promotes the uniformity of bankruptcy administration; (2) whether retention of the proceeding reduces forum shopping and confusion; (3) whether retention of the proceeding fosters the economical use of debtor/creditor resources; (4) whether retention of the proceeding would expedite the bankruptcy process; and, (5) whether the request for withdrawal was timely. *Id.*; *see also In re Visteon Corp.*, 2011 WL 1791302, *3 (D. Del. May 9, 2011). Although a jury demand is not a dispositive factor, whether the claims will be tried to a jury is another factor that weighs in favor of withdrawing non-core proceedings. *Visteon*, 2011 WL 1791302, *3 (citing *NDEP* and *Hatzel & Buehler*).

11. A threshold determination is whether the matter to be withdrawn is a core or non-core proceeding in bankruptcy court. *Visteon*, 2011 WL 1791302, at *3. Defendants' attempt to demonstrate cause to support permissive withdrawal rests almost entirely on the non-core status of the claims pursued in the adversary proceeding, which has been conceded by Plaintiff. (*See* D.I. 9-1, 11, 14). But "the

6

mere fact the Complaint asserts non-core claims does not mandate withdrawal." *In re AgFeed USA, LLC,* 565 B.R. 556, 564 (D. Del. 2016). "Proceedings should not be withdrawn for the sole reason that they are non-core." *Hatzel & Buehler,* 106 B.R. at 371. Indeed, "[t]he 'cause shown' requirement in section 157(d) creates a presumption that Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court unless rebutted by a contravening policy." *AgFeed,* 565 B.R. at 564 (citing *Schubert v. Lucent Techs., Inc. (In re Winstar Commc'ns, Inc.),* 2004 WL 2713101, at *2 (D. Del. Nov. 16, 2004)).

12.   A defendant's right to a jury trial is also considered in conjunction with the *Pruitt* factors, although it is not dispositive. *NDEP,* 203 B.R. at 908. Plaintiff argues that Defendant Piccone has waived his right to a jury trial by filing proofs of claim against the estate. (D.I. 9 at 7-8). Defendant Piccone argues that he has not waived his right to a jury trial because his proofs of claim do not implicate the claims allowance process. (D.I. 14 at 1-2). Indeed, a creditor's right to a jury trial depends upon whether that creditor filed a proof of claim and if the dispute in which it requested a jury trial implicates the claims allowance process. *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 58 (1989); *In re WorldCom, Inc.,* 378 B.R. 745, 752 (Bankr. S.D.N.Y. 2007) (recognizing line of United States Supreme Court cases that stand for the proposition that "by filing a proof of claim a creditor forsakes its right to adjudicate before a jury any issue that bears directly on the allowance of that claim.").

13. Defendant Piccone asserts that his POCs are not inextricably intertwined with the causes of action in the Complaint, but his briefs provide no additional detail or substantive analysis. (*See* D.I. 1-2, 14). Lingo argues that "Piccone's POC relates to his employment contracts and were filed as claims sounding in tort and equity against the Debtor for breach of those contracts." (D.I. 11 at 4-5). "This is distinct from the Fiduciary Duty Claims," Lingo asserts, "which concern Piccone's purported breaches of fiduciary duties as a former director and/or officer of the Debtor. Even if the Bankruptcy Court determines that Piccone has any amount due to him under the employment contracts forming the basis of his assertions in the POC, the Bankruptcy Court does not have to resolve the Fiduciary Duty Claims at that time in order to make that determination." (*Id.*) Conversely, Plaintiff argues that the POCs filed by Piccone are inextricably tied to the adversary proceeding. Plaintiff's argument is compelling. The POCs assert amounts due to Defendant Piccone pursuant to an employment agreement with the Debtors and certain rights to indemnification from the Debtors. Defendant Piccone alleges that he was "compelled to resign" his employment with the Debtors, and indemnification rights were triggered, "due to the gross failure of proper governance by the board and [Defendant Lingo]." (*See* D.I. 9, Ex. A-C). Thus, the gross failures of governance identified by Defendant Piccone also give rise to the claims asserted by the Plaintiff in the adversary proceeding.

14. Defendant Lingo asserts that, even if Piccone has waived his jury trial right, Lingo has not. *See* D.I. 11 at 3-4. In deciding whether to withdraw a case from

8

the bankruptcy court based on a jury demand, courts consider (1) whether the case is likely to reach trial; (2) whether protracted discovery with court oversight will be required; and (3) whether the bankruptcy court is familiar with the issues presented. *In re Enron Corp.*, 317 B.R. 232, 235 (S.D.N.Y. 2004). Here, one can only speculate when the case will proceed to trial. The adversary proceeding remains in the early stages of discovery, and it is possible that the issues regarding release and other issues raised in the pending motions to dismiss may eliminate any need for trial. If not, the claims involving breach of fiduciary duty may involve significant discovery requiring court oversight. The Bankruptcy Court is familiar with the parties and the circumstances that led to the bankruptcy filing, and it routinely adjudicates contested matters involving corporate and contractual issues.

15. As Plaintiff correctly points out, even if certain Defendants may ultimately be entitled to a jury trial, the right to a jury trial does not justify withdrawal of the reference until the case is trial ready. *See In re LTC Holdings, Inc.*, 2019 WL 4643801, at *6 (D. Del. Sept. 24, 2019) (collecting cases); *In re Big V Holding Corp.*, 2002 WL 1482392, at *5 (D. Del. July 11, 2002) ("Withdrawal of the reference based on the ground that a party is entitled to a jury trial should be deferred until the case is 'trial ready.'"); *Schneider v. Riddick (In re Formica Corp.)*, 305 B.R. 147, 150 (S.D.N.Y. 2004) ("While the plaintiff has a right to a jury trial, such a right does not compel withdrawing the reference until the case is ready to proceed to trial."); *In re Enron Corp.*, 318 B.R. 273, 275-76 (S.D.N.Y. 2004) (finding that the bankruptcy

court was in a "superior position to manage" the "complex pretrial proceedings" in the case because it had familiarity with the contracts that were the subject of the dispute and the facts and circumstances which precipitated the debtors' bankruptcy filing).

16. In *American Classic Voyages* and *Big V Holding Corp.*, this Court denied withdrawal requests as premature because, among other things, the cases were not trial ready and the proceedings could still have been resolved through dispositive motions or settlement, eliminating the need for trial altogether. *See Am. Classic Voyages Co.*, 337 B.R. 509, 510 (D. Del. 2006); *Big V*, 2002 WL 1482392, at *1. That is precisely the situation here, where Defendant Piccone may have waived his jury trial right and where the remaining Defendants have pending motions to dismiss the adversary proceeding entirely. Based on these facts, I conclude that it would still be "premature to withdraw the reference to the bankruptcy court based upon the unfixed proposition that a jury trial may occur in the future." *Big V*, 2002 WL 1482392, at *5.

17. Nor do the *Pruitt* factors establish cause for permissive withdrawal at this time. Importantly, these factors are not weighed "on a scale of equipoise"—rather, the Defendants must "overcome a scale already heavily weighted against withdrawal." *Feldman v. ABN AMBRO Mortg. Grp., Inc.*, 2020 WL 618604, at *7 (E.D. Pa. Feb. 10, 2020).

18.     With respect to the first factor—forum shopping—Defendants assert that there are no concerns regarding forum shopping or confusion, as Defendants do not seek transfer of the adversary proceeding from the District of Delaware and the resolution of the adversary proceeding turns on the application of Delaware state law." Plaintiff counters that, through the intense litigation that occurred in the early stages of the Chapter 11 cases, the Bankruptcy Court has been made aware of "Defendants' misconduct" and that Defendants are "[s]eeking to "secur[e] a more friendly forum," which "is not a valid reason for a district court to withdraw [the] reference . . ." *Doctors Assocs., Inc. v. Desai*, 2010 WL 3326726, at *7 (D.N.J. Aug. 23, 2010) (internal citation omitted). Plaintiff also points to the fact that that the United States Trustee moved to appoint an examiner to address allegations of "mismanagement," arguing that "an examiner would be able to provide "[the Bankruptcy] Court and parties in interest with an objective opinion and report of the Debtors' prepetition transactions." (B.D.I. 150). Defendants dispute any characterization of the litigation as intense, give that it "was resolved after limited discovery and before the director defendants even filed a response to the complaint." (D.I. 11 at 6). Based on the limited record, this factor is neutral.

19.     With respect to the second factor—timeliness—Plaintiff concedes that the request is not untimely, and this weighs in Defendants' favor. (D.I. 9 at 14).

20.     With respect to the third factor—uniformity—I do not agree that withdrawal of the reference will promote uniformity of administration in the Debtors'

11

bankruptcy cases. As noted already, the Bankruptcy Court is familiar with the parties, and the fact that Defendant Evans has raised the impact of releases provided in the EPI Plan and the EPI Confirmation Order demonstrates that the uniformity of bankruptcy administration is best served here by denying the Motion to Withdraw, as the Bankruptcy Court expressly retained jurisdiction to hear and decide disputes relating to its orders in the bankruptcy proceedings.

21.   With respect to the fourth factor—expediting the bankruptcy process—Defendants mainly argue that resolution of the adversary proceeding by the Bankruptcy Court would require the Bankruptcy Court to expend resources on resolving issues that do not bear on the administration of the Debtors' estates. (D.I. 1-2 at 4). Plaintiff disagrees, arguing (1) that the Bankruptcy Court already has familiarity with the claims at issue, and it would be a waste of estate resources to restart that process with this Court; (2) Piccone has subjected himself to the jurisdiction of the Bankruptcy Court, so even if this Court were to withdraw the reference now for pre-trial purposes, this Court would be required to remand the case against Piccone for trial; and (3) the Bankruptcy Court expressly retained jurisdiction to hear any disputes regarding the scope and interpretation of the releases provided in the EPI Plan, which resolution of the adversary proceeding will require. I agree that this factor weighs against withdrawal of the reference at this time. Adjudication of the adversary proceeding implicates the scope and interpretation of the EPI Plan

release provisions. The process is streamlined by leaving the adversary proceeding in the Bankruptcy Court unless and until a jury trial is required by any Defendants.

22. With respect to the fifth factor—economical use of resources—Defendants argue that, because the adversary proceeding raises non-core claims and may require a jury trial against some Defendants, judicial economy would be promoted if the Court withdraws the reference because the Court would be required to review the Bankruptcy Court's factual findings and legal conclusions *de novo*. This review, however, does not support permissive withdrawal. As Plaintiff correctly points out, this is precisely the shortcoming noted by the United States District Court for the District of New Jersey in denying certain defendants' request to withdraw the reference:

> Here, the Court finds Defendants failed to satisfy their burden in demonstrating cause to withdraw the referral. . . . Defendants ... essentially rearticulate the same argument for each [*Pruitt*] factor—that granting their Motion to Withdraw Reference will promote judicial economy because the Court is required to review the Bankruptcy Court's factual findings and legal conclusions de novo.
>
> Defendants' argument is not persuasive. As other courts in this district have found, duplication of judicial effort is insufficient to demonstrate cause because "Congress contemplated the district court will have the benefit of the bankruptcy judge's findings of fact and conclusions of law with respect to matters over which the bankruptcy court could not enter final judgments."

13

*In re Princeton Alt. Income Fund, LP*, 2018 WL 4854639, at *2 (D.N.J. Oct. 14, 2018) (internal citations omitted).

23. **Conclusion.** With respect to the Motion to Withdraw, Defendants have failed to demonstrate a "contravening policy" which rebuts the presumption created by § 157(d) that the adversary proceeding should be adjudicated by the Bankruptcy Court. With respect to the unopposed Motion for Determination, the claims asserted in Counts I-VIII of the Complaint arise from state law and are non-core proceedings.

NOW, THEREFORE, it is HEREBY ORDERED that the Motion to Withdraw (D.I. 1) is DENIED, and the unopposed Motion for Determination (D.I. 8) is GRANTED.

Entered this Twentieth day of September 2022.

_____
UNITED STATES DISTRICT JUDGE